**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **Smart Oil LLC,** a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>**David Ebrahimzadeh**, an individual, and **DW Mazel, LLC,** a Wyoming Limited Liability Company.<br><br>Defendants. | Case No. |

# COMPLAINT

Plaintiff Smart Oil, LLC ("Plaintiff" or "Smart Oil"), by and through its undersigned attorneys, brings this Complaint against Defendants David Ebrahimzadeh ("David") and DW Mazel, LLC ("DWM") (collectively "Defendants") and alleges as follows:

## NATURE OF ACTION AND CASE BACKGROUND

1. Plaintiff brings this Complaint against Defendants seeking a declaration by this Court that David and DWM are legally one and the same, and that Smart Oil's judgment against DWM may be enforced against David as if David was personally named as a judgment debtor.

2. David created defendant DWM to conduct a single transaction with Smart Oil.

3. After David registered DWM as a limited liability company with the Wyoming Secretary of State's office, David never did anything which would allow DWM to conduct business or to fulfill its obligations under its contract with Smart Oil.

4. DWM never had an office, never had a bank account, was never capitalized, never conducted meetings or observed any corporate formalities, never had a phone number, never had a website, it never filed tax returns – in fact, it never had a single asset in its own name, possession, or control, ever.

5. DWM was created as an alter ego of David, and adherence to the fiction of its separate corporate existence would promote an injustice.

6. Before filing this Complaint, on September 16, 2015, Smart sued DWM in the United States District Court for the Northern District of Illinois, Case No. 1:15-cv-08146 (Judge Leinenweber).

7. On January 29, 2019, the District Court issued its ruling, granting Smart Oil's motion for summary judgment on its breach of contract claim against DWM, and denying DWM's cross-motion for summary judgment on its claims for breach of contract and fraudulent inducement. (Exhibit 1 hereto). The District Court entered judgment in favor of Smart Oil that same day.

8. On July 10, 2019, the District Court awarded Smart Oil $1,034,754.16 in damages, pre-judgment interest and attorneys' fees. On July 23, 2019, the District Court entered a final Amended Judgment in the amount of $1,014,754.16. ("the Judgment") (Exhibit 2 hereto).

9. DWM appealed the decision and final judgment. On August 17, 2020, the United States Court of Appeals for the Seventh Circuit affirmed the judgment of the District Court in all respects. (Opinion in *Smart Oil, LLC v. DW Mazel, LLC*, No. 19-2542 (7th Cir. Aug. 17, 2020) (Exhibit 3 hereto). The Seventh Circuit also denied DWM's petition for rehearing.

10. On August 31, 2020, Smart Oil filed a Combined Motion for Attorneys' Fees and Post-Judgment Interest.

11. On October 7, 2020, the Seventh Circuit entered an Order granting Smart Oil's Combined Motion and awarded Smart Oil's request for attorney's fees in the amount of $74,815.00 and post-judgment interest in the amount of $21,956.22. ("Appellate Award") (Exhibit 4 hereto).

## PARTIES, JURISDICTION, AND VENUE

12. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a).

13. Smart Oil is a limited liability company organized under the laws of Delaware, with its principal place of business located in Chicago, Illinois. None of Smart Oil's members are residents of New York.

14. DWM is a limited liability company organized under the laws of Wyoming, with its principal place of business in New York, New York. DWM only has one member, David, who lives in New York.

15. David is an individual whose last known address is in New York.

16. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(2), because the lawsuit involves actions that took place in the Northern District of Illinois.

18. This matter also seeks the enforcement of a judgment which was entered in Case No. 1:15-cv-08146 and affirmed on appeal in Appeal No. 19-2542.

19. In Case No. 1:15-cv-08146, the District Court (Judge Leinenweber) held that as to DWM personal jurisdiction and venue were proper in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

20. In the breach of contract lawsuit, Smart Oil alleged, among other things, that the parties entered into a Purchase and Sale Agreement and Joint Escrow Instructions ("the Agreement") by which DWM agreed to purchase defined properties for a purchase price of $67,000,000.00.

21. The Agreement provided for two deposits, one for $300,000.00 and one for $450,000.00. Smart Oil sued DWM for its failure to remit those deposits under a liquidated damages provision of the Agreement.

22. Despite agreeing to make those two deposits in the Agreement, DWM was never capitalized.

23. Because of, among other things, David's decision not to adequately capitalize DWM, it was insolvent.

24. While the appeal was pending, Smart Oil initiated supplementary proceedings in the District Court to collect on its judgment.

25. Over the course of those supplementary proceedings, Smart Oil discovered that DWM existed entirely as an alter ego of its sole member, David, to allow David to make deals ostensibly without any risk. For example, Smart Oil discovered, among other things, that:

a. DWM was never capitalized, and thereby was insolvent at all relevant times;

b. DWM does not have and never had a bank account, in fact it does not have and never had any assets of any kind;

c. DWM does not have and never had an office address, an email address, or a phone number exclusive of David;

d. DWM does not and has never observed any corporate formalities;

e. DWM does not and has never kept formal corporate records;

f. DWM is a mere facade of its sole member, David;

g. DWM has a unity of interest with its sole member, David;

h. DWM's expenses, including its legal fees in the breach of contract lawsuit, were paid by a third party. On information and belief, that party was David or a person or entity acting at David's direction or control; and

i. DWM, in connection with sub-paragraph h above, does not keep an arm's length relationship with David or David's other entities.

## CAUSE OF ACTION

### Count I: Veil Piercing/Alter Ego against DWM and David

26. Smart Oil incorporates the above paragraphs as though fully restated herein verbatim.

27. DWM exists solely as an alter ego with a unity of interest to its sole member, David.

28. DWM has a unity of interests with its sole member, David. In fact, DWM only exists as a vehicle for David to engage in a single deal that was supposed to close in December 2014.

29. Adhering to the fiction that DWM and David have a separate existence would sanction a fraud, promote injustice, or promote inequitable consequences.

WHEREFORE, Smart Oil respectfully requests that this Court enter an order finding that DWM and David are one in the same, that the Judgment and Appellate Award are enforceable against David in the same way that they are enforceable against DWM, and that the Court grant any other further relief that it finds appropriate under the circumstances.

Dated: December 14, 2020

Respectfully submitted,

**Smart Oil, LLC**

By: /s/ *Thomas H. Griseta*
One of Its Attorneys

William J. Factor
Jeffrey E. Crane
Thomas H. Griseta
**FACTORLAW**
105 W. Madison Street, Suite 1500
Chicago, IL 60602
Tel: (312) 629-2031
Fax: (847) 574-8233
E-mail: wfactor@wfactorlaw.com
jcrane@wfactorlaw.com
tgriseta@wfactorlaw.com

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**SMART OIL, LLC,**

**Plaintiff,**

**v.**

**DW MAZEL, LLC,**

**Defendant.**

**Case No. 15 C 8146**

**Judge Harry D. Leinenweber**

## MEMORANDUM OPINION AND ORDER

Plaintiff Smart Oil, LLC ("Smart Oil") and Defendant DW Mazel, LLC ("DWM") cross-move for summary judgment on Counts I and II of Smart Oil's Complaint. DWM also moves for summary judgment on Counts I and II of its Counterclaim. For the reasons stated herein, DWM's Motion (Dkt. No. 74) is denied, and Smart Oil's Motion (Dkt. No. 71) is granted as to Count I of the Complaint. Count II of the Complaint is moot.

## I. UNDISPUTED FACTS

For convenience of the reader, the Court provides both a succinct summary and a more detailed overview of the facts. The following facts are undisputed unless designated otherwise. Lastly, since this case deals with a contractual dispute, the Court will provide the specific contractual provisions at issue when relevant throughout the Opinion.

First, a summary: This lawsuit arises out of a contractual dispute between a buyer, DWM, and a seller, Smart Oil, concerning a November 2, 2014, Purchase and Sale Agreement and Joint Escrow Instructions (the "November Agreement" or "Agreement"). The purpose of the November Agreement was to sell thirty parcels of real property, including gas stations and convenience stores. As part of that Agreement, DWM was required to pay an initial deposit of $300,000.00 ("Deposit") to the Initial Escrow Holder, Jeffrey Zwick & Associates ("Zwick"). The November Agreement required Zwick in turn to transfer the initial deposit to the Title Company Escrow Holder, which the Agreement designated as First American Title Insurance Company ("FATICO"). It also provided that DWM was to pay a subsequent deposit of $450,000.00 ("Additional Deposit") to FATICO at the close of the Due Diligence Period on November 30, 2014. As it turns out, DWM never paid the Deposit or the Additional Deposit. DWM's failure to make such payments led Smart Oil to file the instant action for breach of contract. Smart Oil seeks to enforce its right to the deposits in the total amount of $750,000.00.

Now to dig into the finer points. During 2014, Mehmood Syed, the sole member of Smart Oil and the President of Syed Brokerage & Capital Co., organized and marketed the proposed sale of numerous gas stations, convenience stores, and real properties. (Def.'s Resp. to Pl.'s Stmt. of Material Facts ("Smart Oil SOF") ¶ 5,

Dkt. No. 82.) DWM contracted with Syed Brokerage & Capital Co. and entered into an initial Purchase and Sale Agreement and Joint Escrow Instructions on June 11, 2014 (the "June Agreement"). (Pl.'s Resp. to Def.'s Stmt. of Material Facts ("DWM SOF") ¶ 1, Dkt. No. 79.) As part of that initial agreement, DWM had deposited $250,000.00 with the Title Company Escrow Holder Zwick on June 6, 2014. (DWM SOF ¶¶ 3-4.) That same day, Zwick confirmed that his firm was "holding $250,000.00 for DW Mazel LLC in connection with its proposed purchase of a portfolio of 25 gas stations located throughout Illinois, from Smart Oil LLC." (Zwick Email #1, Ex. B to Def.'s Mot. for Summ. J., Dkt. No. 75-2.) On July 11, 2014, however, that agreement was declared null and void. (Smart Oil SOF ¶ 10.)

On November 2, 2014, Smart Oil and DWM executed a second Purchase and Sale Agreement and Joint Escrow Instructions—the November Agreement. (Smart Oil SOF ¶ 12; Purchase and Sale Agreement and Joint Escrow Instructions ("November Agreement"), Ex. D to Def.'s Mot. for Summ. J., Dkt. No. 75-4.) That Agreement serves as the crux of this lawsuit. The purpose of the Agreement was for the purchase and sale of thirty parcels of real property for $67,000,000.00, (*Id.*), but the transaction never closed (Smart Oil SOF ¶ 43). Prior to the consummation of the transaction, however, the Agreement provided for the Deposit of $300,000.00 and the Additional Deposit of $450,000.00, which combined constituted

the "Earnest Money Deposit" of $750,000.00. (Smart Oil SOF ¶¶ 17-19; November Agreement 2.) The Agreement explicitly designated Zwick as the Initial Escrow Holder and established that the initial escrow was to take place during the Due Diligence Period—the period for investigations and potential negotiations following the acceptance of the November Agreement. (November Agreement 2-3.) According to Smart Oil, DWM's Deposit of $300,00.00 was due by November 2, 2014. (Smart Oil SOF ¶ 17.) DWM disputes this statement and asserts that such payment was dependent on Smart Oil's satisfaction of conditions precedent, which Smart Oil allegedly failed to satisfy. (*Id.*) Regardless, at the close of the Due Diligence Period—November 30, 2014—the Agreement required Zwick to transfer the Deposit to the Title Company Escrow Holder, FATICO. (November Agreement 3.) The Agreement also directed DWM to remit the Additional Deposit of $450,000.00 to FATICO at the close of the Due Diligence Period. (*Id.*)

The November Agreement acknowledged that DWM had already deposited $250,000.00 per the parties' initial agreement in June, and thus only required DWM to remit an additional good faith deposit of $50,000.00 to satisfy the Deposit. (November Agreement 2.) Apparently, DWM never paid this difference. (Smart Oil SOF ¶ 28.) But despite having failed to do so, on November 3, 2014, Zwick emailed DWM, stating: "This shall confirm that as of today, I am holding $300,000.00 for DW Mazel LLC in connection with its

proposed purchase of a portfolio of 30 gas stations located throughout Illinois, from Smart Oil LLC. And the monies shall be held in accordance with the Purchase and Sale Agreement execute [sic] on November 2, 2014." (Zwick Email #2, Ex. E to Def.'s Mot. for Summ. J., Dkt. No. 75-5.) That email was addressed to several individuals, including the President of DWM David Ebrahimzadeh, who then forwarded the email to Syed. (*Id.*) As it turns out, Zwick was not holding the $300,000.00. (DWM SOF ¶ 26.) The email was somewhat of a hoax, the reasons for which the Court is uncertain.

As far as the Court can determine, Zwick had returned the June Agreement deposit of $250,000.00 to DWM at some point in July 2014. (Smart Oil SOF ¶ 11.) But neither Zwick nor DWM notified Smart Oil that the deposit was returned, and that Zwick no longer held any funds in escrow. (Smart Oil SOF ¶ 26.) For its part, DWM contends that Zwick's email was only a draft never intended to be sent to Smart Oil, yet DWM fails to explain why the email was then forwarded to Syed. (Smart Oil SOF ¶ 27.) Either way, DWM remitted neither the Deposit nor the Additional Deposit to FATICO, as specified by the November Agreement. (Smart Oil SOF ¶ 28.)

By the close of the Due Diligence Period on November 30, 2014, DWM was required to provide written notice to Smart Oil if DWM, as a result of its due diligence investigations of the properties, disapproved of the purchase. (November Agreement 4.) Such notice would terminate the Agreement and return the Earnest Money Deposit

to DWM. (*Id.*) Without any such notice, the Agreement presumed DWM was satisfied with its due diligence investigations, thus entitling Smart Oil to the Earnest Money Deposit regardless of whether the parties consummated the transaction in full. (*Id.*) By the November 30th deadline, Smart Oil asserts that DWM never provided any such notice of disapproval. (Smart Oil SOF ¶ 32.) DWM disputes this and points to subsequent emails between the parties, asserting that those emails extended the Due Diligence Period and ultimately terminated the November Agreement. (DWM SOF ¶¶ 29-31.) DWM states that, by responding to DWM's emails asking for an extension and continuing negotiations of the transaction, Smart Oil effectively rendered the Due Diligence provisions inapplicable.

Due diligence investigations, requirements, and deadlines aside, the parties continued to negotiate closing the transaction over several months. To effectuate the November Agreement, Syed contacted the respective property owners about selling their properties to Smart Oil, which Smart Oil would then sell in the aggregate to the ultimate purchaser—in this case, DWM. (Smart Oil SOF ¶¶ 35-36.) This form of transaction is known as a "flip deal." (Smart Oil SOF ¶ 37.) According to Smart Oil, all of the parties involved understood that this was how the transaction was to take place. (*Id.*) Section 17(c) of the Agreement itself states: "**The parties acknowledge that Seller is the holder of a portfolio of**

**gas station businesses, real estate and/or leases and only nominal title holder for purposes of transferring title to the Buyer. Any and all liability or obligation of Seller rests ultimately in each affiliated gas station owner or title holder.**" (November Agreement 16 (emphasis in original).)

The November Agreement was initially set to close in early December 2014. (Smart Oil SOF ¶ 39.) Prior to that time, Smart Oil and the property owners executed contracts to effectuate the sale of the properties. (*See generally* Exs. H-K to Def.'s Mot. for Summ. J., Dkt. No. 75-7-10) These contracts included documentation for the transfer of title. (*Id.*) But Smart Oil and DWM ultimately did not close the deal, nor did they anticipate or schedule the closing of the deal after the initial December deadline. As a result, the property owners never sold their properties to Smart Oil. (*See generally* Affs. of Property Owners, Ex. K to Def.'s Mot. for Summ. J., Dkt. No. 75-10.) The parties dispute, however, whether Smart Oil had authority to transfer title of the property and whether the property owners would have sold their properties if the transaction indeed closed. (Smart Oil SOF ¶ 42.) Smart Oil provides sworn affidavits and testimonies by the owners, who assert that they were ready, willing and able to sell their properties at the close of the deal. (*See generally* Affs. of Property Owners.) DWM points out that Smart Oil has not procured contracts and sworn

affidavits for all property owners, albeit Smart Oil has done so for many or most of them. (DWM SOF ¶ 38.)

Finally, the Agreement specified that FATICO would serve as the title company for the transactions. (November Agreement 6.) DWM refused to proceed with FATICO and instead insisted on a smaller, local New York title company called Atlantis Organization. (Smart Oil SOF 45.) As far as the Court can tell, notwithstanding the terms of the Agreement, Smart Oil and DWM eventually agreed that Chicago Title would ultimately perform the title searches and title commitments and that Atlantis Organization would then handle closing and escrow in connection with the transaction. (*Id.*) Smart Oil asserts that, in November 2014, Chicago Title performed the title searches and prepared title commitments for closing. (Smart Oil SOF ¶¶ 46-47.) Chicago Title then allegedly sent those commitments to Smart Oil's lawyer, who held on to them in preparation for closing the transaction under the November Agreement. (*Id.*) DWM disputes, however, that any such title commitment searches ever took place. (*Id.*)

As should be clear by now, the transaction never closed. As a result, Smart Oil brought this suit, claiming that DWM breached the November Agreement and that it is entitled to the Earnest Money Deposit of $750,000.00. In response, DWM brought counterclaims for both breach of contract and fraudulent inducement, claiming that Smart Oil failed to perform conditions precedent to the Agreement

and fraudulently induced DWM into the Agreement at the outset. Both parties now move for summary judgment as to Counts I and II of Smart Oil's Complaint, and DWM moves for summary judgment as to Counts I and II of its Counterclaim.

## II. ANALYSIS

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Liu v. T&H Mach., Inc.*, 191 F.3d 790, 794 (7th Cir. 1999) (citation omitted). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering Smart Oil's Motion for Summary Judgment, the Court construes the facts in the light most favorable to DWM, and when considering DWM's Motion for Summary Judgment, the Court construes the facts in the light most favorable to Smart Oil. *See First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009).

### A. Breach of Contract

Smart Oil contends that DWM breached the November Agreement by failing to pay the required Earnest Money Deposit of $750,000.00. Under Illinois law, a plaintiff asserting a breach of contract claim must prove: "(1) the existence of a contract, (2)

the performance of its conditions by the plaintiff, (3) a breach by the defendant, and (4) damages as a result of the breach." *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (internal quotation marks and citation omitted).

Both parties agree that a contract existed: the November Agreement. They disagree, however, over whether Smart Oil performed the conditions precedent required by the November Agreement. A condition precedent is "one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform." *Catholic Charities of Archdiocese of Chi. v. Thrope*, 741 N.E.2d 651, 653 (Ill. App. Ct. 2000) (citation omitted). Here, the relevant provision, Section 17(a) of the November Agreement, states:

> IF, FOLLOWING THE EXPIRATION OF THE DUE DILIGENCE PERIOD AND FINANCING PERIOD AS APPLICABLE, BUYER FAILS TO CONSUMATE THIS TRANSACTION AND CLOSE THE ESCROW ON OR BEFORE THE CLOSING DATE (**WITHOUT FAILURE OF ANY CONDITIONS PRECEDENT IN FAVOR OF BUYER**), SELLER SHALL BE ENTITLED TO THE ENTIRE DEPOSIT . . .

(November Agreement 14-15 (emphasis added).) Section 4 of the Agreement provides that "Buyer's obligation to consummate the transaction contemplated by this Agreement are [sic] subject to the timely satisfaction or written waiver of the following conditions precedent for Buyer's benefit." (November Agreement 4.) Those conditions precedent include: (1) due diligence

investigations and materials; (2) title insurance commitments for each of the properties; and (3) inventories of the personal property for each of the businesses. (November Agreement 4-6.) Additionally, Section 15 of the November Agreement provides a series of representations and warranties, which assert:

> In consideration of Buyer entering into this Agreement, and as an inducement for Buyer to enter into this Agreement, Seller makes the following representations and warranties, **each of which is material and is being relied upon by Buyer** (and **the truth and accuracy of which shall constitute a condition precedent to Buyer's obligations hereunder**).

(November Agreement 15 (emphasis added).)

DWM's argument regarding these provisions is twofold: (1) Smart Oil did not have valid contracts with the property owners to sell their properties, including the gas stations and businesses located thereon, and (2) Smart Oil failed to provide DWM the required due diligence materials to effectuate the November Agreement. Thus, Smart Oil allegedly failed to satisfy the conditions precedent, which resulted in Smart Oil's breach of the Agreement, not DWM's. The Court will consider Smart Oil's authority to enter into the Agreement and its due diligence performance separately.

***1. Authority to Convey Property***

DWM contends that at the time the parties executed the November Agreement, Smart Oil did not have the authorization or legal rights to convey the thirty parcels of property. In support

of its proposition, DWM presents a dizzying array of factual assertions, but the Court need not delve deep into these assertions for the answer is straightforward.

Solely for purposes of enforcing payment of the Earnest Money Deposit, Smart Oil has demonstrated that it had adequate authority to enter into the Agreement. Smart Oil provides the property owners' sworn statements, which assert that Smart Oil had authority through Syed to purchase the respective properties and that the owners understood Smart Oil would then "flip" the properties to the ultimate buyer—in this case, DWM. Also, these owners testify that they were ready and willing to sell their respective properties in December 2014, in accord with the November Agreement. Construing the facts in the light most favorable to Smart Oil, the parties to the Agreement and the property owners were well-aware that Smart Oil was not to fund the transaction, but rather to facilitate the transfer of title from property owners to DWM. Smart Oil's representation as such is sufficient to show that it had the authority and legal right to convey the properties. Accordingly, DWM's argument fails.

***2. Due Diligence***

DWM further contends that Smart Oil never provided it with the requisite due diligence materials, which constituted conditions precedent to enforce the November Agreement. These materials included: (1) title commitments; (2) "trailing 12-month

financials" for all of the properties; (3) inventories; and (4) financial records for the properties that were signed and certified by the property owners. Smart Oil's alleged failure to provide such materials thus resulted in its breach of the Agreement and DWM being relieved of its obligation to pay the Earnest Money Deposit.

Contrary to DWM's assertions, Smart Oil argues that it did provide DWM with the appropriate due diligence materials. It provided profit and loss statements, invoices, tax reports, and surveys. Smart Oil asserts that it also issued title commitments for each parcel of property included in the November Agreement and was prepared to deliver title to DWM at the close of the Agreement. While demonstrating Smart Oil's willingness to comply fully with and effectuate the Agreement, the extent to which certain materials were or were not handed over to DWM is beside the point.

The November Agreement dictates what actions DWM may take in the event certain due diligence investigations or materials are inadequate or to the dissatisfaction of DWM. In relevant part, Section 4(a)(i) of the Agreement provides:

> On or before the expiration of the Due Diligence Period, Buyer shall deliver to Seller; Buyer's written notice of its disapproval of its due diligence investigations for the Property. Buyer's failure to timely deliver such notice shall be deemed Buyer's approval of such investigations. If Buyer provides **timely written notice of its disapproval** of its due diligence investigations for these Properties, this **Agreement shall terminate and**

> **the earnest money shall be returned** to Buyer by the Initial Escrow Agent.

(November Agreement 4 (emphasis added).) In layman's terms, the Agreement afforded DWM the right to provide written notice of disapproval of the purchase before the expiration of the Due Diligence Period. Such written notice would have nullified the Agreement and excused DWM from its obligation to pay the Earnest Money Deposit. However, DWM never provided such written notice. Its failure to do so converted any disapproval it had from its investigations to one of approval at the close of the Due Diligence Period. Moreover, DWM's obligation to pay the Earnest Money Deposit remained intact. DWM cannot now sidestep its obligation by arguing *ex post facto* that certain due diligence requirements were not met.

It is also important to note that Smart Oil was required to meet the conditions precedent not to enforce the Earnest Money Deposit but to consummate and enforce the entirety of the Agreement—the purchase and sale of the thirty parcels of property. These conditions included representations and warranties, described above, and the appropriate due diligence actions and materials currently discussed. To enforce the transfer of the Earnest Money Deposit, however, Smart Oil did not have as great a burden. Smart Oil's right to enforce the Earnest Money Deposit was dependent on DWM's right to conduct due diligence investigations

and notify Smart Oil of its disapproval therefrom, which DWM did not do. DWM's failure to exercise that right rendered it obligated to pay the Earnest Money Deposit in full, regardless of whether all conditions precedent were met to DWM's satisfaction and the parties ultimately consummated the Agreement. The language of the Agreement speaks for itself; for example: "Buyer's obligation to consummate the transaction contemplated by this Agreement are [sic] subject to the timely satisfaction or written waiver of the following conditions precedent for Buyer's benefit." (November Agreement 4.) This provision relates to the consummation of the transaction in its entirety, not the Due Diligence Period. The specific provisions governing the Due Diligence Period and the Earnest Money Deposit, recited earlier, do not make this same assertion. Instead, the emphasis is placed on DWM's right to provide notice of disapproval should it become dissatisfied with its due diligence investigations. It is only by providing notice of dissatisfaction that DWM can escape its obligation to pay the Earnest Money Deposit. DWM's argument thus holds no water.

In sum, Smart Oil has the authority and legal right to enforce the November Agreement, and any due diligence expectations it failed to meet were excused by DWM's failure to submit a written notice of disapproval. Therefore, by failing to pay Smart Oil the Earnest Money Deposit, DWM breached the November Agreement as a matter of law.

**B. Earnest Money Deposit**

DWM argues that even if the November Agreement is enforceable, Smart Oil is not entitled to the Earnest Money Deposit—liquidated damages for $750,000.00. DWM asserts three theories to bolster its argument: (1) the Agreement's liquidated damages provision serves as a penalty, which is unenforceable under Illinois law; (2) even if the provision was enforceable, Smart Oil waived its right to enforce it; and (3) Smart Oil cannot enforce the provision because it is not a real party of interest to the Agreement. Each theory will be discussed in turn.

***1. Liquidated Damages Provision***

Under Illinois Law, while liquidated damages provisions are enforceable, penalty provisions are not. *G.K. Dev., Inc. v. Iowa Malls Financing Corp.*, 3 N.E.3d 804, 815-16 (Ill. App. Ct. 2013). Whether a provision for damages is a penalty clause or a liquidated damages clause is a question of law. *Id.* at 815. Generally, a liquidated damages provision in a real estate contract is enforceable when (1) the parties intended to establish an agreed upon amount of damages in the event of a breach; (2) the damages amount was reasonable at the time of contracting and bears some relation to the actual damages which might be sustained; and (3) the actual damages would be difficult to prove and uncertain in

amount. *Morris v. Flores*, 528 N.E.2d 1013, 1014 (Ill. App. Ct. 1988) (citation omitted).

Here, the pertinent portions of the liquidated damages provision in the November Agreement state:

> Except as otherwise specifically provided in this Agreement, the Earnest Money Deposit (the Deposit and the Additional Deposit) and all accrued interest thereon shall become nonrefundable to Buyer at the end of the Due Diligence Period, subject to the other conditions precedent for the benefit of the parties as set forth under this Agreement, and shall be applied toward the Purchase Price upon the Close of Escrow, or in the event of Buyer's default under this Agreement, shall be paid to Seller.
>
> If the Buyer defaults in its performance of any term, covenant, condition, or obligation under this Agreement, including the obligation of Buyer to purchase the Property if all conditions precedent to such obligations has been satisfied, Seller shall receive the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages.
>
> IF, FOLLOWING THE EXPIRATION OF THE DUE DILIGENCE PERIOD AND FINANCING PERIOD AS APPLICABLE, BUYER FAILS TO CONSUMATE THIS TRANSACTION AND CLOSE THE ESCROW ON OR BEFORE THE CLOSING DATE (WITHOUT FAILURE OF ANY CONDITIONS PRECEDENT IN FAVOR OF BUYER), SELLER SHALL BE ENTITLED TO THE ENTIRE DEPOSIT DESCRIBED ABOVE, IT BEING UNDERSTOOD THAT THE DAMAGE TO SELLER CAUSED BY ANY SUCH DEFAULT OF BUYER WOULD BE EXTREMELY DIFFICULT TO OR IMPOSSIBLE TO ASCERTAIN. IN SUCH EVENT, SELLER SHALL BE RELEASED FROM ANY FURTHER OBLIGATION TO SELL THE PROPERTY TO BUYER AND ANY OTHER OBLIGATIONS UNDER THIS AGREEMENT, THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT. SELLER AND BUYER SHALL EACH INITIAL THIS SECTION WHERE INDICATED BELOW, CONSENTING AND AGREEING TO THE PROVISIONS HEREOF.

(November Agreement 14-15 (emphasis in original).) DWM asserts that this liquidated damages provision is unenforceable for three

reasons: First, the parties did not negotiate an amount for liquidated damages that would be fair or reasonable in the case of a breach, and so the $750,000.00 constitutes a penalty that was intended to punish DWM. Second, Smart Oil cannot establish that it anticipated incurring damages as a result of a breach by DWM or, at a minimum, that any damages would be difficult to ascertain. Third, there are no escrow funds to recover. All three contentions miss the mark.

As a preliminary matter, the Court finds that both parties intended to agree upon an amount for damages in the case of a breach. Where a liquidated damages provision is clear and unambiguous on its face, "the parties' intent must be determined solely from the language of the agreement itself, and it is presumed that the parties inserted each provision deliberately and for purpose." *Jameson Realty Group v. Kostiner*, 813 N.E.2d 1124, 1133 (Ill. App. Ct. 2004). The key contractual provisions, recited above, clearly and unambiguously state that "Seller shall receive the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages." (November Agreement 14-15.) Directly below the provision, the Agreement required the signatures of both parties. (*Id.*) Both parties signed as to this specific provision, and the Court finds these signatures suffice to show that the parties intended to establish an agreed upon

amount of damages in the event of a breach. *Morris*, 528 N.E.2d at 1014.

The Court now turns to DWM's first argument—that the parties did not negotiate an amount for liquidated damages that was fair and reasonable, and so the liquidated damages provision constitutes a penalty. The liquidated damages provision provided for the payment of $750,000.00 to Smart Oil in the event of a breach by DWM. DWM does not do much by way of supporting its argument other than reasserting that the amount of damages was unreasonable. It also states that "[i]n *J.F. McKinney,* the court determined that a $4.3 million figure was not an accurate prediction of damages." (Def.'s Mot. for Summ. J. 5, Dkt. No. 76.) The Court cannot find the mentioned case, but presumes that DWM is referring to *G.K. Dev., Inc. v. Iowa Malls Fin. Corp.*, 3 N.E.3d 804 (Ill. App. Ct. 2013). Even considering *G.K. Development Inc.,* however, the Court finds DWM's argument unfounded. In that case, the court held that "the parties negotiated a $4.3 million holdback, which represented the entire, present-day value of the 20-year lease, in the event that the lease did not go through . . . The holdback amount of $4.3 million simply does not bear any relation to the damages sustained for a 91-day delay in securing permits and, therefore, was not a reasonable prediction of damages." *Id.* at 817. Here, the liquidated damages provision constitutes approximately one percent of the purchase price of $67

million, as opposed to 100 percent of the present value of the lease at issue in *G.K. Development Inc.* The $750,000.00 in liquidated damages was reasonable, and as such, does not constitute a penalty.

The Court next turns to Smart Oil's ability to ascertain damages. "Where damages for breach of contract would be uncertain or difficult to calculate, [the Illinois Supreme Court] has upheld a reasonable amount stipulated at the time of contracting as liquidated damages without regard to actual damages." *Karimi v. 401 North Wabash Venture, LLC*, 952 N.E.2d 1278, 1289 (Ill. App. Ct. 2011) (citation omitted). Moreover, "[p]arties often include liquidated damages provisions in real estate transactions to avoid the difficulty of ascertaining and proving damages by such methods as market value, resale value or otherwise." *Id.* at 1285 (internal quotation marks and citation omitted); *see also Berggren v. Hill*, 928 N.E.2d 1225, 1231 (Ill. App. Ct. 2010) (finding that "at the time of contracting, the potential damages to either party were uncertain and it was reasonable for them to bargain over the terms of [the liquidated damages] provision to avoid the difficulty of ascertaining losses in the event of a breach"); *see also Siegel v. Levy Org. Dev. Co.*, 538 N.E.2d 715, 716 (Ill. App. Ct. 1989) (finding enforceable the liquidated damages of $320,000 of earnest money paid toward the purchase of a $1.6 million condominium). Finally, when determining whether actual damages would be

uncertain in amount and difficult to prove, courts look to the time of contracting, not the time of breach. *Jameson*, 813 N.E.2d at 1130.

Here, the November Agreement explicitly stated that damages would be difficult to ascertain. In relevant part, the Agreement provides, "SELLER SHALL BE ENTITLED TO THE ENTIRE DEPOSIT DESCRIBED ABOVE, IT BEING UNDERSTOOD THAT THE DAMAGE TO SELLER CAUSED BY ANY SUCH DEFAULT OF BUYER WOULD BE EXTREMELY DIFFICULT TO OR IMPOSSIBLE TO ASCERTAIN." (November Agreement 14 (emphasis in original).) DWM signed directly beneath this provision, agreeing to the assertion that damages were unascertainable. But now DWM argues otherwise.

In any case, given the magnitude of the transaction—thirty parcels of property for the purchase price of $67 million—ascertaining damages would prove difficult in the event of a breach. Moreover, whether Smart Oil did in fact suffer damages due to a breach is beside the point. The Court must look to the time of contracting, and during that time, it finds, as the terms of the Agreement itself dictates, that any ensuing damages would be difficult to ascertain. *Id.* Lastly, as discussed above, both the amount of damages—$750,000.00—and the incorporation of such damages in the November Agreement were reasonable to avoid such difficulty in ascertaining losses at some later point in time. *Berggren*, 928 N.E.2d at 1231. Accordingly, the liquidated damages provision was appropriate under the circumstances.

Finally, as to DWM's third contention, the fact that there are no escrow funds to recover does not preclude Smart Oil from receiving liquidated damages. DWM primarily relies on *Cutielletta v. Griffin*, No. 113429-U (Ill. App. Ct. 2012), which the Court notes was filed under Illinois Supreme Court Rule 23. That rule prohibits citing such orders as precedent. Regardless, the reasoning in that case is also inapplicable here. In *Cutielletta,* the court refused to award the plaintiffs the earnest money, which was never deposited in escrow, because "the contract did not contain any language which explained that the escrowee was to pay the seller if the final earnest money was not deposited in escrow when the buyers defaulted by terminating the contract." *Id.* at ¶ 60. Here, however, the liquidated damages provision explicitly states that "Seller shall receive the entire Ernest Money Deposit and all accrued interest thereon as complete liquidated damages." (November Agreement at 14-15.) The terms of the contract itself determine the result. DWM's argument thus fails.

In sum, Smart Oil has satisfied the requirements for upholding the liquidated damages provision of the November Agreement. The Court next considers whether Smart Oil waived its right to invoke that provision and if it did not, whether it is the appropriate party of interest to do so.

### *2. Waiver*

DWM contends that even if the liquidated damages provision is enforceable, Smart Oil's conduct effectively terminated or waived enforcement of it. In support of its argument, DWM asserts that it exchanged multiple emails with Smart Oil that ultimately extended the Due Diligence Period and, after a certain point, even terminated the November Agreement. Moreover, DWM argues that at no time during the pendency of the Agreement did Smart Oil demand the Earnest Money Deposit, thereby waiving Smart Oil's right to enforce the liquidated damages provision now. The Court, however, disagrees that any of the foregoing conduct terminated or waived enforceability of the provision.

As provided for in the November Agreement, the Due Diligence Period closed on November 30, 2014. In its brief, DWM cites to an email dated November 28, 2014, to support its proposition that the parties extended that deadline. (Ex. F to Def.'s Mot. for Summ. J., Dkt. No. 75-6.) This email, however, was written by DWM's attorney, requesting a 2-week extension and offering to prepare a formal, written extension if Smart Oil agreed. (*Id.*) Curiously absent from the record or DWM's brief, however, is any email by Smart Oil having agreed to or approved such extension for purposes of excusing DWM's obligation to pay the Earnest Money Deposit.

Instead, DWM relies on subsequent emails dated from January through May 2015, which demonstrate that DWM and Smart Oil

continued negotiations of the transaction's close. But continued negotiations do not mean that Smart Oil extended the Due Diligence Period. Further, the Agreement's subsequent termination does not excuse DWM from its obligation to pay the Earnest Money Deposit. Specific to the liquidated damages provision, the Agreement states, "THE PROVISIONS OF THIS SECTION SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT." (November Agreement 15.) As explained earlier, DWM's obligation is waived only if DWM, as a result of its due diligence investigations of the properties, provided written notice of its disapproval of the purchase. DWM did not provide such notice, so its obligation remains.

Smart Oil also did not waive its right to liquidated damages. On the contrary, on March 11, 2015, Smart Oil demanded DWM remit the Earnest Money Deposit by March 16, 2015. (Ex. L to Def.'s Mot. for Summ. J., Dkt. No. 75-12.) DWM did not do so, and then Smart Oil brought this suit. DWM's assertion is a baseless one, and the Court fails to find on any other grounds that Smart Oil waived its right. Accordingly, DWM's arguments fails.

***3. Real Party in Interest***

In a final attempt to thwart Smart Oil's ability to recover damages, DWM complains that Smart Oil is not the real party in interest. DWM argues that Smart Oil assigned to the property owners its rights to DWM's escrow deposit and thus lacks standing to bring this suit.

Case: 1:15-cv-08148 Document #: 85 Filed: 01/29/19 Page 25 of 27 PageID #:1941

The real party in interest is defined as "the person or entity entitled to the benefits if the action is successful. In other words, the real party in interest has an actual and substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the case." *Lyons v. Ryan*, 780 N.E.2d 1098, 1102 (Ill. App. Ct. 2002) (internal quotation marks and citation omitted). In the instant case, it is Smart Oil that initiated negotiations and sought to transact the sale of the properties. DWM contracted with Smart Oil; the property owners were not parties to the November Agreement. Smart Oil did enter into separate contracts with the property owners, but these contracts mirrored the November Agreement and did not assign Smart Oil's rights over to the owners. (Ex. J to Def.'s Mot. for Summ. J., Dkt. No. 75-10.) DWM's argument holds no water. Smart Oil is the "real party in interest" and has standing to bring this suit.

In sum, DWM has failed to show that it is entitled to summary judgment as to Count I of both Smart Oil's Complaint and DWM's Counterclaim. DWM breached the November Agreement as a matter of law; thus, Smart Oil is entitled to summary judgment as to Count I of its Complaint.

**C. Smart Oil's Declaratory Judgment Claim (Count II)**

For sake of completeness, the Court finds moot Count II of Smart Oil's Complaint—declaratory judgment against Zwick. By way

of stipulation, Zwick was dismissed from the instant lawsuit. Moreover, both parties agree that Zwick does not hold any funds to remit. Accordingly, Count II fails as a matter of law.

**D. DWM's Fraudulent Inducement Claim**

As a final matter, in Count II of its Counterclaim, DWM asserts that it was fraudulently induced to enter the November Agreement. "Fraudulent inducement is a form of common-law fraud." *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287 (Ill. App. Ct. 2013) (citing *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995)). To establish fraud, DWM must show: (1) a false statement of material fact; (2) knowledge or belief by Smart Oil that the statement was false; (3) an intention to induce DWM to act; (4) reasonable reliance upon the truth of the statement by DWM; and (5) damage to DWM resulting from this reliance. *Id.*

DWM contends that Smart Oil knowingly made false statements concerning its ability to effectuate a sale under the November Agreement. Smart Oil supposedly made such false statements intentionally to induce DWM to enter the Agreement, and as a result, DWM suffered damages in its effort to consummate the transaction. DWM's arguments, once again, are wanting and misguided.

Construing the facts in the light most favorable to Smart Oil, the record shows that the property owners were willing and ready to sell their properties to DWM. To reiterate, the owners

provided sworn statements affirming their preparedness to effectuate the sale of their properties under the November Agreement. They authorized Smart Oil to purchase their properties, understanding that Smart Oil would then "flip" the properties to a subsequent buyer. As the Court established above, Smart Oil had permission and authorization to sell the properties, and as far as the Court can determine, Smart Oil was ready to close the transaction if DWM pursued as much. There is not much, if anything at all, by way of showing that Smart Oil fraudulently induced DWM to enter into the November Agreement. Accordingly, DWM's fraudulent inducement claim fails as a matter of law.

## III. CONCLUSION

For the reasons stated herein, DWM's Motion for Summary Judgment (Dkt. No. 74) is denied, and Smart Oil's Motion for Summary Judgment (Dkt. No. 71) is granted as to Count I of the Complaint. Count II of the Complaint is moot.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 1/29/2019

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SMART OIL, LLC,<br><br>Plaintiff(s),<br><br>v.<br><br>DW MAZEL, LLC,<br><br>Defendant(s). | Case No. 15 C 8146<br>Judge Harry D. Leinenweber |

**AMENDED JUDGMENT IN A CIVIL CASE**

Judgment is hereby entered (check appropriate box):

☐ in favor of plaintiff(s)
and against defendant(s)
in the amount of $ ,

which ☐ includes pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.
Plaintiff(s) shall recover costs from defendant(s).

---

☐ in favor of defendant(s)
and against plaintiff(s)
. Defendant(s) shall recover costs from plaintiff(s).

---

☒ other: Judgment is hereby entered in favor of plaintiff Smart Oil, LLC and against defendant DW Mazel, LLC on Count I of its Complaint in the total amount of $1,014,754.16, which includes $750,000.00 in damages; $169,043.11 in pre-judgment interest; $112,022.00 in attorneys' fees; $3,689.05 in costs; and a judgment set off of $20,000.00 provided for in the parties June 7, 2019, joint position paper submitted to the Court. Count II of plaintiff's Complaint is dismissed as moot. Counts I and II of defendant's Counterclaim are dismissed.

---

This action was *(check one)*:

☐ tried by a jury with Judge presiding, and the jury has rendered a verdict.
☐ tried by Judge without a jury and the above decision was reached.
☒ decided by Judge Harry D. Leinenweber on a motion for summary judgment.

Date: 7/23/2019

Thomas G. Bruton, Clerk of Court

Melanie Foster, Deputy Clerk

# Exhibit 3

In the
# United States Court of Appeals
For the Seventh Circuit

No. 19-2542

SMART OIL, LLC,

*Plaintiff-Appellee*,

*v.*

DW MAZEL, LLC,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-08146 — **Harry D. Leinenweber**, *Judge*.

ARGUED MAY 21, 2020 — DECIDED AUGUST 17, 2020

Before MANION, BARRETT, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. Smart Oil, LLC agreed to sell thirty parcels of land with gas stations and convenience stores to DW Mazel, LLC ("DWM"). DWM failed to close under the agreement, which by its terms granted Smart Oil the earnest money for the transaction as liquidated damages. But DWM never paid that money, and Smart Oil sued. DWM counterclaimed for breach of contract and fraudulent inducement.

The district court granted Smart Oil summary judgment, ruling that DWM breached the agreement by not paying the earnest money, which Smart Oil was entitled to as liquidated damages under Illinois law. The court also ruled that DWM's counterclaims for breach of contract and fraudulent inducement failed for the same reason. DWM appeals. The district court ruled correctly in all respects, so we affirm.

## I. BACKGROUND

During 2014, Smart Oil's sole member, Mehmood Syed, marketed for sale numerous properties with gas stations and convenience stores. After lengthy negotiations, Smart Oil and DWM executed a Purchase and Sale Agreement and Joint Escrow Instructions (the "Agreement") by which DWM agreed to purchase thirty such parcels of real property for $67 million. Both parties were represented by counsel throughout the negotiations.

The Agreement requires DWM to initially deposit $300,000 into an escrow account. That deposit was to take place during a due diligence period following acceptance of the Agreement. The Agreement obliges the escrow account holder to transfer that deposit to the title company. Then, at the close of the due diligence period, DWM is to pay a second deposit of $450,000 to the title company. The total earnest money of $750,000 is about one percent of the total purchase price.

DWM never paid the initial earnest money deposit. Despite DWM's failure to do so, the parties continued their due diligence investigations and negotiations. By the close of the due diligence period, the Agreement requires DWM to provide Smart Oil with written notice if, after its investigations,

DWM disapproved of the purchase. If DWM had provided this written notice, the Agreement would have terminated, and the earnest money would have been returned to DWM. If DWM did not provide that written notice, section 4(a)(i) of the Agreement states that such "failure to timely deliver [written] notice [of its disapproval] shall be deemed Buyer's approval of such investigations," and Smart Oil would be entitled to keep the earnest money if the deal otherwise fell through. DWM asserts it negotiated with Smart Oil to lengthen the due diligence period, extending the time to provide written notice of disapproval. Regardless, DWM failed to provide written notice of disapproval, which DWM does not dispute. At the close of the due diligence period, DWM also did not pay the second deposit.

In the meantime, Syed contacted property owners about selling their properties to Smart Oil which would then sell them in the aggregate to DWM. This is known as a "flip deal," and according to Smart Oil was contemplated under section 17(c) of the Agreement, which states in bold: "The parties acknowledge that Seller is the holder of a portfolio of gas station businesses, real estate and/or leases and only nominal title holder for purposes of transferring title to the Buyer." To make good on its end of the Agreement, Smart Oil executed contracts with various property owners for the sale of their properties.

Ultimately, DWM failed to close under the terms of the Agreement and the parties' deal fell through. The individual property owners did not sell their properties to Smart Oil under the individual contracts, and Smart Oil never flipped those properties to DWM.

Smart Oil sued DWM for breach of contract, arguing it was entitled to $750,000 in earnest money as liquidated damages under the following term: "If Buyer defaults in its performance … under this Agreement, including the obligation of Buyer to purchase the Property if all conditions precedent to such obligations has been satisfied, Seller shall receive the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages." The Agreement explains the need for liquidated damages in conspicuous language: "IT BEING UNDERSTOOD THAT THE DAMAGE TO SELLER CAUSED BY ANY SUCH DEFAULT OF BUYER WOULD BE EXTREMELY DIFFICULT TO OR IMPOSSIBLE TO ASCERTAIN." The liquidated damages clause survives termination of the contract per section 17(a). Both parties signed under that clause demonstrating their consent and agreement.

DWM counterclaimed for breach of contract and fraudulent inducement, asserting Smart Oil failed to perform conditions precedent under the Agreement and deceived DWM into executing the Agreement. According to DWM, Smart Oil did not have authority to convey the properties and failed to provide adequate due diligence materials. After discovery both parties moved for summary judgment.

The district court ruled that Smart Oil satisfied all conditions precedent of the Agreement and that DWM breached the contract by not paying the earnest money. First, the court found that Smart Oil had authority to convey the properties, relying on numerous sworn statements from property owners verifying that they were ready to sell the properties to Smart Oil for Smart Oil to "flip" them to DWM. Second, the court found that DWM failed to give written notice of disapproval

of the due diligence investigations, and that failure was "deemed Buyer's approval of such investigations" under Section 4(a)(i) of the Agreement. Because DWM approved of the due diligence materials under the Agreement, Smart Oil satisfied its condition precedent for due diligence disclosures. So DWM's obligation to pay the earnest money remained, and DWM admits it never paid.

The district court also held that Smart Oil was entitled to the earnest money as liquidated damages under Illinois law, noting that DWM's representative signed the liquidated damages clause that explicitly stated actual damages would be extremely difficult or impossible to ascertain. The court found the liquidated damages figure to be a fair and reasonable amount and granted Smart Oil's motion for summary judgment.

The district court also denied DWM's cross-motion for summary judgment on its breach of contract and fraudulent inducement claims. Construing the facts in the light most favorable to Smart Oil, the court found that the property owners authorized Smart Oil to effectuate the flip transactions and that they were ready to sell their properties to DWM. The Agreement includes a prevailing party attorneys' fees and costs provision, under which the court granted fees and costs to Smart Oil. DWM appeals.

## II. Discussion

As a federal court sitting in diversity, we honor the Agreement's choice-of-law clause specifying Illinois law as controlling, unless to do so would be contrary to public policy. *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2014). We review the district court's decision granting

summary judgment de novo, construing the facts in a light favorable to the non-moving party. *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 694–95 (7th Cir. 2017).

**A. Breach of Contract**

Under Illinois law, a plaintiff suing for breach of contract must prove: (1) the contract existed, (2) the plaintiff performed the conditions precedent required by the contract, (3) the defendant breached the contract, and (4) damages. *DeliverMed Holdings, LLC v. Schaltenbrand*, 734 F.3d 616, 626 (7th Cir. 2013) (citing *Law Offices of Colleen M. McLaughlin v. First Star Fin. Corp.*, 963 N.E.2d 968, 981 (Ill. App. Ct. 2011)).

The parties agree a contract exists, and they also agree DWM never paid the earnest money. They disagree whether Smart Oil performed its conditions precedent under the Agreement. DWM asserts Smart Oil's breach of contract claim fails because DWM is excused from paying the earnest money. DWM reasons that Smart Oil is only entitled to keep the earnest money under Section 17(a) of the Agreement if it has satisfied conditions precedent, which DWM alleges Smart Oil failed to do. Smart Oil's alleged failure to satisfy its conditions precedent is also the basis for DWM's breach of contract counterclaim.

A "condition precedent is one that must be met before a contract becomes effective or that is to be performed by one party to an existing contract before the other party is obligated to perform." *Catholic Charities of the Archdiocese of Chicago v. Thorpe*, 741 N.E.2d 651, 653 (Ill. App. Ct. 2000) (quoting *McAnelly v. Graves*, 467 N.E.2d 377, 379 (Ill. App. Ct. 1984)). Section 4 of the Agreement provides that DWM's obligation to consummate the transaction is subject to the following

conditions precedent for DWM's benefit: (1) due diligence investigations and materials; (2) title insurance commitments for each of the properties; (3) inventories of the personal property for each of the businesses; and (4) that Smart Oil's representations and warranties were truthful and accurate under Section 15 of the Agreement. DWM argues Smart Oil failed to satisfy two of these conditions: it did not have authority to convey the properties, and it failed to produce the requisite due diligence materials. Both arguments fail, however.

First, Smart Oil has shown that it had authority to execute the Agreement. Section 17(c) of the Agreement states in bold: "The parties acknowledge that Seller is the holder of a portfolio of gas station businesses, real estate and/or leases and only nominal title holder for purposes of transferring title to the Buyer." To effectuate the "flip deal" contemplated by the Agreement, Smart Oil executed contracts with numerous property owners for the sale of their properties, which would then be sold to the aggregate purchaser, DWM. To prove Smart Oil had authority to execute the Agreement, Smart Oil provided sworn statements from owners of 21 of the 30 properties. They declared under penalty of perjury they were ready and willing to sell their properties to carry out the Agreement and that Smart Oil had authority to flip the properties to DWM. As for the remaining nine properties, DWM has not produced any evidence to show that Smart Oil did not have authority to do a "flip deal" or that Smart Oil misled DWM. Nevertheless, DWM maintains that Smart Oil failed to "produce the necessary evidence to establish that it had the actual legal right and authority to sell 30 Gas Stations to DWM" because Smart Oil's discovery production was "nine short of the 30 Gas Stations."

The Agreement does not require Smart Oil to submit the specific proof that DWM requests. On its breach of contract claim Smart Oil must prove it satisfied its conditions precedent by a preponderance of the evidence. *Extra Equipamentos E Exportacao Ltda. v. Case Corp.*, 541 F.3d 719, 724 (7th Cir. 2008) (noting "all that is required to prove a breach of contract" claim in Illinois is "preponderance of the evidence"). Submitting declarations from more than two-thirds of the property owners—with no evidence to the contrary for the remaining properties and no evidence that Smart Oil deceived DWM—satisfies that standard.

Second, even if Smart Oil failed to provide DWM with the requisite due diligence materials—which we do not conclude—DWM approved Smart Oil's due diligence disclosures by not submitting written notice of disapproval. Section 4(a)(i) of the Agreement states: "On or before the expiration of the Due Diligence Period, Buyer shall deliver to Seller; Buyer's written notice of its disapproval of its due diligence investigations for the Property. Buyer's failure to timely deliver such notice shall be deemed Buyer's approval of such investigations." DWM argues the parties agreed to an extension of the due diligence period. Even if so, an extension is not written notice of disapproval. Had DWM provided such notice, the Agreement would have terminated, and DWM could have recovered the earnest money. But that is not what happened, so DWM's obligation to pay the earnest money remains unfulfilled.

DWM argues even if it did not provide written notice of disapproval under section 4(a)(i), Smart Oil is still not entitled to the earnest money because section 4(a)(i) "does not address the recovery of liquidated damages, but instead the effect of

DWM's written disapproval of due diligence materials." This argument is misplaced. DWM contends Smart Oil failed to satisfy a condition precedent by not submitting proper due diligence materials. DWM's lack of written notice of disapproval under Section 4(a)(i), which per the Agreement indicated DWM approved Smart Oil's due diligence materials, rebuts DWM's assertion that Smart Oil failed to satisfy its conditions precedent.

Because Smart Oil satisfied its conditions precedent under the Agreement, DWM breached the contract by not paying the earnest money. DWM's counterclaim for breach of contract fails for the same reason. We turn next to the question whether Smart Oil is entitled to the earnest money as liquidated damages.

**B. Liquidated Damages**

A liquidated damages clause provides a predetermined remedy in the event a party breaches. *McNamara v. O'Donnell Haddad LLC*, 2016 IL App (2d) 150519-U, ¶28. "This predetermined amount may or may not exceed the actual damages and both parties agree to accept this inherent risk." *Id.* An unreasonably large liquidated damages clause is unenforceable under Illinois law on grounds of public policy. *Id.* Liquidated damages clauses in real estate contracts are common to avoid the difficulty of proving damages by methods such as market value, resale value, or otherwise. *Karimi v. 401 N. Wabash Venture, LLC*, 2011 IL App (1st) 102670, ¶16 (citing *Siegel v. Levy Organization Dev. Co.*, 538 N.E.2d 715, 717 (Ill. App. Ct. 1989)).

Whether a liquidated damages clause in a contract is a penalty or a valid provision is a question of law. *Grossinger*

Case: 1:20-cv-07804 Document #: 1 Filed: 12/30/20 Page 46 of 58 PageID #:46
Case: 19-2542 Document: 30 Filed: 08/17/2020 Pages: 16



*Motocorp, Inc. v. Am. Nat'l Bank & Trust Co.*, 607 N.E.2d 1337, 1345 (Ill. App. Ct. 1992). The burden of proof "rests on the party resisting enforcement of a liquidated damages clause to show that the agreed-upon damages are clearly disproportionate to a reasonable estimate of the actual damages likely to be caused by a breach." *XCO Int'l, Inc. v. Pac. Sci. Co.*, 369 F.3d 998, 1003 (7th Cir. 2003). Here, that burden rests on DWM.

Under Illinois law, a liquidated damages clause is valid and enforceable if: (1) the parties intended to agree in advance to the settlement of damages that might arise from the breach; (2) the amount of liquidated damages was reasonable at the time of contracting, bearing some relation to the damages that might occur; and (3) actual damages would be uncertain in amount and difficult to prove. *Karimi*, 2011 IL App (1st) 102670, ¶16 (citing *Grossinger*, 607 N.E.2d at 1346). "The reasonableness of the amount, though, depends not on the actual damages suffered by the non-breaching party, but on whether the amount reasonably forecasts and bears some relation to the parties' potential loss as determined at the time of contracting." *Id.* ¶24

Illinois's requirement that liquidated damages be reasonable has been characterized as "mysterious," especially in cases involving sophisticated parties. *XCO Int'l, Inc.*, 369 F.3d at 1001. "[W]here both parties are substantial commercial enterprises … it is difficult to see why the law should take an interest in whether the estimate of harm underlying the liquidation of damages is reasonable. Courts don't review the other provisions of contracts for reasonableness; why this one?" *Id.* Yet the rule against contractual penalties "hangs on, but is chastened by an emerging presumption against

interpreting liquidated damages clauses as penalty clauses." *Id.* at 1003.

We do not forget that state courts are the "ultimate expositors" of their own laws. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *see, e.g.*, *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1093 (7th Cir. 1999) ("Lacking any inherent power to make state law such as a state court might have … a federal court must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be wise policy."). So we do not opine on whether Illinois's liquidated damages law constitutes wise policy; we only apply it.

Here, the Agreement states if DWM fails to purchase the properties, Smart Oil "shall receive the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages." The Agreement further explains the rationale for liquidated damages in conspicuous language that damages to Smart Oil caused by DWM's default "WOULD BE EXTREMELY DIFFICULT TO OR IMPOSSIBLE TO ASCERTAIN." Both parties signed immediately below the liquidated damages clause, demonstrating their consent and agreement to the provision.

The plain language of the Agreement satisfies two of the three elements for liquidated damages under Illinois law. Specifically, the Agreement states that the parties' signature under the liquidated damages clause demonstrated their consent and agreement to the provision, satisfying the first element that "the parties intended to agree in advance to the settlement of damages that might arise from the breach." *Karimi*, 2011 IL App (1st) 102670, ¶16. The Agreement also satisfies the third element that "actual damages would be uncertain in amount and difficult to prove" by explicitly stating:

"DAMAGE TO SELLER … WOULD BE EXTREMELY DIFFICULT TO OR IMPOSSIBLE TO ASCERTAIN." What remains is to evaluate the second element, the reasonableness of the damages amount.

The liquidated damages amount here was $750,000, or approximately one percent of the contractual purchase price of $67 million. Under Illinois law, a liquidated damages clause of one percent of the purchase price is reasonable, given that Illinois "[c]ourts have considered earnest money representing up to 20% of the purchase price a reasonable sum as liquidated damages." *Karimi*, 2011 IL App (1st) 102670, ¶24 (holding earnest money of 15% of the purchase price in real estate contract was reasonable liquidated damages); *see, e.g.*, *Siegel v. Levy Org. Dev. Co.*, 182 Ill. App. 3d 859, 860–63 (Ill. App. Ct. 1989) (holding earnest money of $320,000 on a $1,600,000 contract, representing two percent of the purchase price, was reasonable). One percent of the Agreement's purchase price is not "clearly disproportionate" under *XCO Int'l, Inc.*, 369 F.3d at 1003.

DWM argues the liquidated damages clause is unenforceable because Smart Oil has not incurred any actual damages. But whether Smart Oil ultimately incurred any actual damages is not relevant to the reasonableness decision, and actual damages are not required under Illinois law before liquidated damages can be assessed. *See, e.g.*, *Kensington Rock Island Ltd. P'ship v. Am. Eagle Historic Partners*, 921 F.2d 122, 124 (7th Cir. 1990) (noting the "Illinois rule is clear" that plaintiff was entitled to earnest money in real estate contract because of buyer's default regardless of the amount of actual damages which may have resulted); *Bamberg v. Griffin*, 394 N.E.2d 910, 914 (Ill. App. Ct. 1979) (noting "it has been long established in Illinois

that the provision for earnest money in a contract, in the absence of an express provision to the contrary, will be interpreted as a provision for liquidated damages and enforced without actual proof of damages required"). The only requirement under Illinois law is whether, at the time of contracting, the damages amount was reasonable in that it bore some relation to the damages that might occur. *Karimi*, 2011 IL App (1st) 102670, ¶16. The liquidated damages figure here meets that test. "The nature of a liquidated damages provision is such that the set amount may at times exceed actual damages, and other times actual damages may exceed the set amount. In entering into the purchase agreement, both parties here agreed to accept this inherent risk." *Id.* ¶27. Here, the set amount was a minor fraction of the damages amount.

DWM also contends Smart Oil is not entitled to the earnest money because the Agreement limits Smart Oil's recovery to the amount actually deposited in escrow. Because DWM never deposited the earnest money, it claims there is nothing for Smart Oil to recover. The liquidated damages provision states in unambiguous terms: "Seller *shall receive* the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages." The Agreement defines "Earnest Money Deposit" as "the Deposit and the Additional Deposit," which was the $300,000 initially due then the additional $450,000 at the close of the due diligence period.

This court (like others) has consistently interpreted "shall" as mandatory language. *See, e.g., Judge v. Quinn*, 612 F.3d 537, 547 (7th Cir. 2010) (noting that "shall" is "normally understood as mandatory language"); *Thompson v. Veach*, 501 F.3d 832, 836 (7th Cir. 2007) (discussing "shall" as mandatory language); *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972

F.2d 753, 756 (7th Cir. 1992) (finding use of the word "shall" in a contract "mandatory" and "obligatory"). *Black's Law Dictionary* defines "shall" as "has a duty to, more broadly is required to" and explains that "[t]his is the mandatory sense that drafters typically intend and that courts typically uphold." BLACK'S LAW DICTIONARY 1653 (11th ed. 2019). Although the Agreement describes the earnest money due as the "Deposit," it does not limit liquidated damages to funds actually deposited. And the language of "shall receive the entire Earnest Money Deposit" is mandatory, even if DWM did not already deposit the money. Because DWM failed to close on the transaction, by the plain language of the Agreement, Smart Oil "shall receive the entire Earnest Money Deposit and all accrued interest thereon as complete liquidated damages."

DWM's argument that it does not have to pay the earnest money deposit because it never paid it in the first instance would result in the absurd outcome of wrongdoers being absolved of their debts simply by not paying them. DWM "cannot insist on abandoning [its] contract and yet [not pay] the deposit because that would enable [it] to take advantage of [its] own wrong." *Summers v. Hedenber*, 198 Ill. App. 460, 467 (1916).

Our role "in interpreting a contract is to give effect to the intention of the parties as expressed in the agreed terms." *Life Plans, Inc.*, 800 F.3d at 349. "The first and most reliable indicator of the parties' intent is what the parties wrote." *Ocean Atl. Dev. Corp. v. Aurora Christian Schs., Inc.*, 322 F.3d 983, 1006 (7th Cir. 2003) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993)). The parties here are sophisticated commercial enterprises that engaged in extensive, arms-length negotiations and, with the advice of counsel,

reached an agreement. When experienced businesses agree to a liquidated damages clause that satisfies the requirements of Illinois law, we hold the parties to their bargained deal.

**C. Fraudulent Inducement**

Finally, DWM argues the district court erred by dismissing its fraudulent inducement counterclaim. DWM asserts Smart Oil knowingly made false statements concerning its ability to complete a sale under the Agreement. To prove fraudulent inducement under Illinois law, DWM must show: (1) a false statement of material fact; (2) knowledge or belief by Smart Oil that the statement was false; (3) an intention to induce DWM to act; (4) reasonable reliance upon the truth of the statement by DWM; and (5) damages. *Avon Hardware Co. v. Ace Hardware Corp.*, 998 N.E.2d 1281, 1287 (Ill. App. Ct. 2013) (citing *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995)). These elements must be proved by clear and convincing evidence. *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003). Again, we review the district court's grant of summary judgment de novo in the light most favorable to the non-movant, here Smart Oil. *Westfield Ins. Co.*, 863 F.3d at 694–95.

The district court opined "[t]here is not much, if anything at all, by way of showing that Smart Oil fraudulently induced DWM to enter into the [] Agreement." That has not changed on appeal. Construing the facts in the light most favorable to the non-movant on this request, Smart Oil, the record shows that the property owners were ready and willing to sell their properties to DWM to fulfill the Agreement. As discussed above, Smart Oil had authority to purchase these properties and then "flip" them to DWM as the ultimate buyer. So DWM's fraudulent inducement claim fails as a matter of law.

## III. CONCLUSION

Smart Oil satisfied all conditions precedent under the Agreement. DWM breached the contract by failing to pay the earnest money due, which constitutes valid liquidated damages under Illinois law. And DWM's counterclaims, including for fraudulent inducement, fail as a matter of law. So we AFFIRM the judgment of the district court.

As noted above, the Agreement contains a clause shifting attorneys' fees and costs to the prevailing party. Having prevailed on appeal, Smart Oil has 14 days to submit its requested attorneys' fees and costs, and DWM has 14 days to respond.

# Exhibit 4

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

October 7, 2020

**Before**[*]

DANIEL A. MANION, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 19-2542

| | |
|---|---|
| SMART OIL, LLC, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:15-cv-08146 |
| DW MAZEL, LLC, *Defendant-Appellant*. | Harry D. Leinenweber, *Judge*. |

**ORDER**

On August 17, 2020, we affirmed the district court's rulings in favor of the Plaintiff-Appellee Smart Oil, LLC, and against Defendant-Appellant DW Mazel, LLC ("DWM"). In doing so, we noted that the Agreement between the parties at the center of this litigation contained a clause for shifting attorney's fees and costs to the prevailing party. We invited Smart Oil, as the prevailing party on appeal, to submit its requested attorney's fees and costs within 14 days. It has done so, seeking $74,815.00 in attorney's fees and $21,956.22 in post-judgment interest. Our opinion gave DWM 14 days to respond, and it has done so. Thus, the matter is ready for decision.

---

[*] Circuit Judge Barrett was a member of the panel when Smart Oil's motion for attorneys' fees and post-judgment interest was submitted but did not participate in this decision. The motion is resolved by a quorum of the panel pursuant to 28 U.S.C. § 46(d).

Smart Oil has itemized $74,815.00 in attorney's fees for 235.10 hours of work done between March 16, 2019, and July 24, 2020. The total includes hours billed by one "of counsel" attorney, one partner, one associate, and three legal assistants. The main categories of tasks include briefing a district court motion for prejudgment interest and attorney's fees, briefing on appellate jurisdiction following a premature appeal by DWM in appeal No. 19-1362, work on a post-judgment enforcement action, mediation in this court, briefing in this appeal, and oral argument.

At the outset, we note that DWM makes no challenge to counsel's billing rates. The primary attorney on the case (who is "of counsel") charged $350, a partner charged $400, an associate responsible for post-judgment collection and enforcement proceedings charged $300, and three legal assistants charged $150, $125, and $100. We find these rates, which are supported by attached affidavits, reasonable. *See Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011).

With respect to the number of hours billed by Smart Oil's attorneys, DWM raises several objections. First, DWM argues that under the terms of the parties' Agreement, Smart Oil is not entitled to any fees related to post-judgment proceedings or actions taken to collect on the judgment. The Agreement's Legal Fees provision, contained in Paragraph 22, states:

> <u>Legal Fees</u>. If either Buyer or Seller brings any action or suit against the other for any matter relating to or arising out of this Agreement, then the prevailing party in such action or dispute, whether by final judgment or out of court settlement, shall be entitled to recover from the other party all costs and expenses of suit, including reasonable attorneys' fees. Any judgment or order entered in any final judgment shall contain a specific provision providing for the recovery of all costs and expenses of suit, including actual attorneys' fees incurred in enforcing, perfecting and executing such judgment. For purposes of this Section 2, such costs shall include, without limitation, in-house or outside attorney's fees, costs and expenses incurred in the following: (i) post-judgment motions; (ii) contempt proceedings; (iii) garnishment, levy, and debtor and third party examinations; (iv) discovery; and (v) bankruptcy litigation.

DWM argues that under this provision, in order to recover the costs listed in "Section 2," Smart Oil needed to "seek to have placed into a judgment" the Agreement's specific language; in other words, a judgment explicitly "providing for the recovery of all costs and expenses of suit, including actual attorneys' fees incurred in enforcing, perfecting and executing such judgment." DWM asserts that Smart Oil has waived its right to seek those costs by not asking the district court to include that language in its judgment. DWM thus asks us to exclude the $8,220 in fees billed by an associate who solely worked on post-judgment collection efforts, and an additional $4,813.75 billed by other attorneys and staff for post-judgment collection efforts.

We find DWM's position unpersuasive. We interpret the Agreement's fee-shifting provision under Illinois law, which requires that such contractual provisions "be strictly construed," and that courts "determine the intention of the parties regarding the payment of fees." *J.B. Esker & Sons, Inc. v. Cle-Pa's P'ship*, 757 N.E.2d 1271, 1276 (Ill. App. Ct. 2001). Here, the Agreement provides that the prevailing party is entitled to recover "all costs and expenses of suit" and directs that any final judgment "shall contain a specific provision providing for the recovery of all costs and expenses of suit, including actual attorneys' fees incurred in enforcing, perfecting and executing such judgment." We do not read this provision as an added requirement that Smart Oil had to satisfy in order to be entitled to recover those fees; rather, we interpret the provision as directing that final judgment allow the prevailing party to recover those fees. Thus, in construing the Agreement's language, we conclude it was the parties' intent that post-judgment enforcement costs be recoverable. Further, although the district court did not include the Agreement's exact language in its final judgment, it provided that Smart Oil shall recover costs from DWM, awarded reasonable fees and costs accrued up to that point, and granted summary judgment on Count I of Smart Oil's complaint, which sought "attorneys' fees and costs as permitted under the Agreement."

Second, DWM challenges the $1,390 billed by support staff, pointing out the district court disallowed similar fees on the basis that they were charged for merely clerical tasks such as "organizing file folders, preparing documents, and copying documents." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 553 (7th Cir. 1999). We disagree with DWM's characterization, however. Counsel appropriately delegated simpler tasks to support staff when possible, and the hours billed are not for tasks so basic as organizing files or copying documents. Instead, support staff billed for work such as editing and finalizing documents and then filing those documents. We find these hours reasonably billed.

Third, DWM argues to the extent Smart Oil seeks attorney's fees for actions it took in the district court, it has waived "any right to have this court award them as a first impression issue now." We disagree. Although typically awarding fees for work performed in the district court falls within that court's discretion, "in some cases in which detailed billing records of the applicant are submitted to the court of appeals … and the opposing party has had a chance to rebut … we can make the full award and save the parties the added expense and the district judge the added bother of a separate fees proceeding in the district court." *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437–38 (7th Cir. 2004). This is such a case. DWM takes issue with fees counsel seeks to recover for briefing and arguing Smart Oil's motion for pre-judgment interest and attorney's fees in the district court; briefing appellate jurisdiction in DWM's first appeal (which we dismissed as premature); and briefing a response to DWM's motion to reconsider in the district court. Yet, DWM does not challenge any of these billed hours as unreasonable; it asserts only that Smart Oil should have first sought the fees in the district court. Further, these fees were incurred after Smart Oil had filed its motion for attorney's fees in the district court. Accordingly, we find the hours reasonable and proper for inclusion here.

Fourth, DWM challenges the 95.45 hours billed by Smart Oil's attorneys for preparation of their 40-page appellate brief. It says that the number of hours billed is "highly irregular and suspect." As support, counsel for DWM notes that he spent 27.9 hours and 28.6 hours drafting DWM's opening brief and reply brief respectively. But DWM engages in no meaningful evaluation of the work performed by Smart Oil's attorneys. Simply because DWM's counsel spent fewer hours on briefing does not mean counsel for Smart Oil's billed hours were unreasonable. We thus find Smart Oil entitled to the full billed amount for briefing before this court.

Last, we turn to Smart Oil's request for post-judgment interest under 28 U.S.C. § 1961(a), which provides that "Interest shall be allowed on any money judgment in a civil case recovered in a district court." DWM objects, arguing that this court did not invite Smart Oil to request post-judgment interest, and that Smart Oil has waived its request by not seeking that relief either in the district court or its opening brief on appeal. We again disagree. Smart Oil has not waived its right to seek post-judgment interest because under § 1961 "regardless of whether there is any reference to postjudgment interest in the pleadings, a court's order, or the entry of a money judgment, a prevailing plaintiff in federal court is automatically entitled to postjudgment interest." *Miller v. Artistic Cleaners*, 153 F.3d 781, 785 (7th Cir. 1998). Further, under Federal Rule of Appellate Procedure 37, upon affirmance of a money

judgment in a civil case "whatever interest is allowed by law is payable from the date when the district court's judgment was entered" without further instructions from this court. We see no error in Smart Oil's calculation of post-judgment interest owed, and DWM identifies none, so Smart Oil is entitled to the requested amount of $21,956.22.

In sum, we grant Smart Oil's request for attorney's fees in the amount of $74,815.00 and post-judgment interest in the amount of $21,956.22.